**Katie LOWERY, et al., Plaintiffs,**

v.

**HONEYWELL INTERNATIONAL, INC., et al., Defendants.**

**Civil Action No. 06–AR–1370–S.**

United States District Court, N.D. Alabama, Southern Division.

Oct. 24, 2006.

**34.** *United States v. Evans,* 262 F.Supp.2d 1292, 1297 (D.Utah 2003).

Becky Thomason, Bill Thomason, Thomason Maples & Allsup LLC, Bessemer, AL, Honora M. Gathings, Lloyd W. Gathings, II, Richard Warren Kinney, III, Gathings Law, Birmingham, AL, for Plaintiffs.

Adam K. Peck, Jackson R. Sharman, III, W. Larkin Radney, IV, William Earl Bonner, Lightfoot Franklin & White LLC, Brian M. Blythe, Joel M. Kuehnert, Joseph B. Mays, Jr., Sid J. Trant, Bradley Arant Rose & White LLP, Kevin T. Shires, Law Office of Kevin T. Shires LLC, Robert H. Sprain, Jr., Sprain & Associates PC, John E. Getty, Steven F. Casey, Balch & Bingham LLP, James C. Huckaby, Jr., John W. Scott, Huckaby Scott & Dukes PC, Christopher J. Williams, H. Thomas Wells, Jr., J. Alan Truitt, Maynard Cooper & Gale PC, J. Alan Truitt, Christopher C. Haug, Patricia Clotfelter, Baker Donelson Bearman Caldwell & Berkowitz PC, Alfred F. Smith, Jr., Sela E. Stroud, Bainbridge Mims Rogers & Smith LLP, De Martenson, Frank E. Lankford, Jr., S.A. Bradley Baker, III, Huie Fernambucq & Stewart LLP, Michael D. Freeman, Spencer M. Taylor, Teresa G. Minor, Tyrell Jordan, Balch & Bingham LLP, Tyrell Jordan, Patrick Patronas, W. Hill Sewell, Lloyd Gray & Whitehead PC, Birmingham, AL, for Defendants.

## MEMORANDUM OPINION

ACKER, District Judge.

Before the court is the motion of Katie Lowery and her 418 fellow plaintiffs ("plaintiffs") to remand their above-entitled conjoined action to the Circuit Court of Jefferson County, Alabama, from which it was removed by one defendant, Alabama Power Company ("Alabama Power"), as a purported "mass action" under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1453 and 1332(d). Also before the court is plaintiffs' motion for reconsideration of the court's order of August 16, 2006, requiring them to state their opinions of the fair values of their respective 419 individual claims and whether or not an aggregation of their claims can reasonably be expected to reach the $5,000,000 in controversy necessary for a CAFA removal. For the reasons that follow, the court will grant both the motion for reconsideration and the motion to remand.

## I. Introduction and Procedural History

Plaintiffs own and occupy numerous parcels of real property situated in Jefferson County, Alabama. On January 24, 2003,

Ms. Lowery and eight other individuals filed a complaint against eleven named alleged polluters and multitudinous fictitious defendants in the Circuit Court of Jefferson County, Alabama, Bessemer Division, seeking damages under Alabama law for trespass to person and realty; negligent, wanton or intentional injury; nuisance; and outrageous conduct. If any tort was committed by any defendant, it arose out of the discharge of pollutants into the air of Jefferson County. There is nothing in the original complaint to distinguish between a plaintiff who may be claiming severe lung disease from one who may be claiming grit in her grits. The original complaint included the following demand:

> [E]ach Plaintiff demands judgment against said Defendants in the sum of One Million Two Hundred Fifty Thousand Dollars and costs.

On October 31, 2005, after the case had been transferred from the Bessemer Division to the Birmingham Division, plaintiffs filed an amended and recast complaint, in which 533 individuals were named as plaintiffs and an additional defendant was named, and the preposterous demand for $1,250,000 for each plaintiff was eliminated and replaced with the following enigma:

> [T]he plaintiffs demand judgment against said defendants in an amount of compensatory and punitive damages to be determined by a jury in excess of the jurisdictional minimum of this [state] Court, together with interest from the date of injury, and the costs of this proceeding.

There was no request, express or implied, for status as a class action in the original or any subsequent amended complaint. The only excuse offered for conglomerating the separate, individual complaints into one suit was that the claims shared common questions of fact and law. On March 16, 2006, plaintiffs filed a second amended and recast complaint, which named 417 plaintiffs and in which the indeterminate demand for judgment and damages was not changed.

On June 20, 2006, plaintiffs filed a third amended and recast complaint, naming 419 plaintiffs and adding as defendants, Alabama Power and Filler Products Company, Inc. ("Filler Products"). No new theories of liability or new acts of tortious conduct were added, and plaintiffs' demand for an unspecified amount in damages was identical to that contained in their first and second amended and recast complaints. On July 17, 2006, Alabama Power removed the case to this court. In its supplemental notice of removal it invoked 28 U.S.C. § 1446 and the removal provisions of CAFA, 28 U.S.C. §§ 1453 and 1332(d), asserting that the action constitutes a "mass action", which, under 28 U.S.C. § 1332(d)(11)(B)(i), is removable. Paragraph 3 of the supplement to the notice of removal began with this sentence: "Plaintiffs did not specify their damages in the complaint". On August 3, 2006, plaintiffs filed the motion to remand now under consideration. Although plaintiffs initially withdrew their motion to remand, they thereafter asked that it be reinstated, and the court reinstated it.[1]

On August 11, 2006, defendants, Filler Products, Hanna Steel Corporation, United States Steel Corporation, Butler Manufacturing Company, Honeywell International, Inc., Fritz Enterprises, Inc., CertainTeed Corporation, Vulcan Materials Company, Baily–PVS Oxides, LLC, and W.J. Bullock Inc., purported to join Alabama Power's notice of removal, al-

---

1. Alabama Power objects to the court's having allowed plaintiffs to refile their motion to remand. Even if the permission given was not a matter within the court's discretion, the court's subject matter jurisdiction would necessarily be addressed *sua sponte*.

though they deny that they were required to do so. They take the position that the entire case was effectively removed by the filing of Alabama Power's notice of removal.

## II. Was the Case Successfully Removed by All or Any of the Defendants?

### A. The Significance of the Date of Commencement

■ CAFA expressly provides that "[t]he amendment made by this Act shall apply to any civil action **commenced** on or after the date of enactment of this act." (emphasis added). The date of CAFA's enactment was February 18, 2005. According to CAFA, then, to the extent this action was "commenced" before February 18, 2005, CAFA provided no removal opportunity.

Although plaintiffs filed their original complaint before CAFA's enactment, the amendment that added Alabama Power and Filler Products, and that precipitated this removal, came after CAFA's effective date. This procedural fact creates two potentially dispositive removability questions: (1) did the filing of the third amended complaint "commence" a new suit for purposes of CAFA; and (2) if so, did the new suit, by retroactive effect, "commence" as to **all** defendants, or only as to Alabama Power and Filler Products. Filler Products did not join the removal until more than thirty days after service of the third amended complaint, as required by 28 U.S.C. § 1446(b), and for aught appearing, it never filed a copy of a removal notice with the clerk of the state court as required by 28 U.S.C. § 1446(d). Therefore, the purported joinder by Filler Products in the removal by Alabama Power presents a timeliness issue not shared by Alabama Power or any of the original defendants.

After the court heard oral argument on plaintiffs' motion to remand, the Eleventh Circuit followed the Fifth Circuit's decision in *Braud v. Transport Service Co. of Illinois*, 445 F.3d 801, 803 (5th Cir.2006), and held that state law determines when an action is "commenced" for the purposes of CAFA. *Tmesys, Inc. v. Eufaula Drugs, Inc.*, 462 F.3d 1317, 1319 (11th Cir.2006). In *Braud*, the Fifth Circuit had earlier explained that the date upon which an action is "commenced" in a state court is ascertained from that state's rules of procedure. 445 F.3d at 803. Accordingly, this court must look to the Alabama Rules of Civil Procedure to find out when this action was "commenced." Alabama's rules provide that "[a] civil action is commenced by filing a complaint with the court." Ala. R. Civ. P. 3(a). The fact, then, is that unless there is a way for defendants to escape the clutches of this procedural rule, this action was "commenced" on January 24, 2003, when the original complaint was filed.

■ As the *Braud* court recognized, a distinct issue appears when a complaint is amended to add a defendant. Following the Seventh Circuit's *dicta* from *Schillinger v. Union Pac. R.R.*, 425 F.3d 330 (7th Cir.2005), the Fifth Circuit in *Braud* held that **"as to the new defendant,** removability is determined as of the date of receipt of service of the amended complaint, not as of the date on which the original suit was filed in state court." 445 F.3d at 805. (emphasis added). This language is pregnant with meaning. It means that **as to Alabama Power and Filler Products** for the purposes of CAFA this action was not "commenced" until June 20, 2006, while as to the original defendants, it was "commenced" on January 24, 2003. There is no basis for artificially applying the concept of "retroactivity" so as to make June 20, 2006, the "commencement" date as to original defendants against whom no new claims were made in the amended complaint filed on June 20, 2006. Accordingly,

only Alabama Power and Filler Products could, by filing notices of removal within thirty days after June 20, 2006, and notifying the state court clerk of the removal, avail themselves of the removal provisions of CAFA. This leaves for discussion only the question of whether the procedural and substantive requisites for a CAFA removal were met by Alabama Power and Filler Products.

All defendants strenuously argue that a CAFA removal by a single defendant added after CAFA's enactment operates to effect the removal of the entire action, including all of the parties and all of the claims, and not just the claims asserted against the defendant or defendants added after CAFA's effective date. Defendants rely on (1) the statutory language of CAFA, (2) Congressional intent, and (3) the Fifth Circuit's decision in *Braud.* The recent case of *Moniz v. Bayer A.G.,* 447 F.Supp.2d 31 (D.Mass.2006), was not urged upon the court, that case having only come up on the Westlaw screen after this removal, but for the reasons that follow, the court remains unpersuaded, either by defendants' arguments, or by *Moniz* and the authorities it cites.

Defendants first contend that the statutory language supports their belief that a single, post-CAFA defendant can remove the **entire** action. In particular, defendants note that, with regard to a "class action", CAFA provides that "such **action** may be removed by any defendant without the consent of all defendants". 28 U.S.C. § 1453(b) (emphasis added). Defendants' position in this regard is not entirely devoid of merit. Under 28 U.S.C. § 1332(d)(11)(A), "a **mass action** shall be **deemed** to be a **class action** removable

under paragraphs (2) through (10) if it otherwise meets the provisions of those paragraphs". (emphasis added). Accordingly, if defendants are correct when they say that this action constitutes a "mass action" under 28 U.S.C. § 1332(d)(11)(B)(i), Alabama Power's notice of removal arguably functions as a removal of the entire **"action"**, including **all** plaintiffs' claims against all defendants, sweeping into this court the claims against the pre-CAFA defendants who theoretically might not have wanted their case in a federal court, and the one post-CAFA defendant who, in this case, did not timely join in the removal.

■ Whether or not this action is, in fact and law, a "mass action" according to CAFA's definition of that term is not clear. *See Abrego Abrego v. The Dow Chemical Co.,* 443 F.3d 676, 682 (9th Cir.2006) (discussing the confusion around the definition of "mass action", and noting that meshing existing jurisdictional and removal statutes with CAFA "mass action" provisions is "far from straightforward"). Regardless of how this Gordian knot will ultimately be untied, the court rejects defendants' argument, because adopting it would render § 1332 internally inconsistent. In particular, § 1332(d)(11)(B)(i) provides that "[a] s used in subsection (A), the term 'mass action' means any civil action ... in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, **except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements** under subsection (a)." (emphasis added).[2] If defendants' position

---

**2.** The difficulty in meshing "mass action" with "class action" is illustrated by the fact that a "class action" is not removable under CAFA unless "the matter in controversy exceeds the sum or value of $5,000,000." A "mass action" is "deemed" to be a "class

action," if it has 100 plaintiffs, but, hypothetically, if 99 of the plaintiffs have claims of nominal value, their individual claims cannot be removed. Does this mean that one claim out of 100 is removable if it is worth enough

were adopted, this enormous loose conglomeration of 419 individual damage suits suddenly became removable on June 20, 2006, under § 1333(d)(11)(A), even though this court clearly lacked subject-matter jurisdiction over the claims of the individual plaintiffs whose claims are worth less than $75,000. If there is internal inconsistency in CAFA, that inconsistency must be resolved by giving predominance to the language that limits jurisdiction, and not to language that would expand it. Although defendants' argument has colorable merit, the court respectfully rejects the idea that CAFA's language mandates complete removability of this case. To the contrary, the court concludes that an "action" removable under § 1453(b), when used in connection with a "mass action" as defined by § 1332(d)(11), refers only to the removal of the claims of those plaintiffs over whom the federal court has subject-matter jurisdiction, namely, those that exceed $75,000 in value and that were commenced after February 18, 2005.

■ Not taking "no" for an answer, defendants next argue that in CAFA Congress intended to expand federal jurisdiction, and that the removal provisions as a matter of this new public policy are to be liberally construed in favor of removal. Defendants rely on the following language from a Senate Judiciary Committee Report: "[b]y this provision, it is the Committee's intent to overrule case law developed by the federal courts requiring the consent of all parties, to the extent that such precedents might be applied to class actions subject to the expanded jurisdictional removal provisions . . . ." Judiciary Committee Report on Class Action Fairness Act, S.Rep. No. 109–14 (1st Sess.

2005). This argument falls short for several reasons. First, the provision to which the Committee language refers is subsection 1453(b), and not subsection 1332(d), the subsection that defines "mass action," as distinct from "class action," the latter of which this case admittedly is not. While a consideration of legislative history is appropriate in instances where there is ambiguity in the statutory language, and while the word "action", as used in subsection 1453(b), is arguably ambiguous, the portion of the Committee Report that defendants rely upon does not resolve that possible ambiguity.[3] More importantly, the Committee language does not support the position defendants put forward. The sentence immediately preceding the one cited by defendants states that "[t]his revision to the removal rules will prevent a plaintiffs' attorney from recruiting a 'friendly' defendant . . . who could refuse to join in a removal to federal court and thereby thwart the legislative efforts of the primary corporate defendant to seek a federal forum in which to litigate the pending claims". S.Rep. No. 109–14. This portion of the Committee Report is inapposite, because no party to the instant case claims that a failure to remove by any defendants other than Alabama Power precluded Alabama Power's removal. And even if the Committee Report excerpt were relevant, it was issued ten days **after** CAFA was enacted, and by a small subset of the voting body of the Senate. Such after-the-fact bolstering or "shaping" is a technique of statutory construction this court rejects. This court shares the Ninth Circuit's recognition that this belated Committee Report has limited persuasive value. *See Abrego*, 443 F.3d at 683. Furthermore,

---

to bring the aggregation of claims to the magic figure of $5,000,000, or is it necessary that at least 100 plaintiffs each have a claim worth $75,000 and an aggregate value of $5,000,000?

3. Speaking of ambiguity, there is other language in CAFA that is ambiguous enough to tempt post-hoc comment by Congresspersons and Senators with agendas.

the same Senate Report was relied upon by defendants in *Moniz*, in which defendants, defending their CAFA removal, quoted the following language from the Report, at page 43: "it is the intent of the Committee that the named plaintiff(s) should bear the burden of demonstrating that a case should be remanded to state court". The district court speaking in *Moniz* made short shrift of this argument, quoting the Southern District of Texas as follows:

> The rule that the proponent of federal jurisdiction bears the risk of non-persuasion has been around for a long time. To change such a rule, Congress must enact a statute [to that effect]. A declaration by 13 Senators will not serve.

*Werner v. KPMG LLP,* 415 F.Supp.2d 688, 693 (S.D.Tex.2006).

As their last gasp, defendants argue that the entire action is removable because *Braud,* properly construed, requires it. Despite the Fifth Circuit's clearly explaining that the action became removable only **"as to the new defendant"**, defendants point out that the Fifth Circuit did actually find the entire action there to have been properly removed. Although defendants do not misstate *Braud* in this regard, they err in asserting that "the salient facts before the Court in *Braud* were not unlike those now presented in this case." The most salient, the most distinctive, and the most material fact in this case is that it is a purported "mass action" under 28 U.S.C. § 1332(d)(11)(B)(i), and not a "class action" under 28 U.S.C. § 1332(d)(1)(B), as in *Braud.* In accordance with a limiting *proviso* within the section of the statute defin-

ing "mass action," subject-matter jurisdiction exists "only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a)." 28 U.S.C. § 1332(d)(11)(B)(i). There is no such jurisdictional limitation for individual plaintiffs in **class** actions. Thus, this case presents an issue that the *Braud* court did not consider, and had no reason to consider, namely, the effect of § 1332(d)(11)(B)(i) on whether a "mass action" can be removed in its entirely by a post-CAFA defendant, just as if the action had been a "class action" under § 1332(d)(1)(B). To apply *Braud* to a purported "mass action" would result in a multi-plaintiff action being entirely removable, overriding a clear lack of jurisdiction over the claims of particular plaintiffs having claims of less than $75,000 in value.[4] Lastly, defendants forget that decisions by the Fifth Circuit are not binding on the Eleventh Circuit unless pre–1981.

Despite CAFA, federal courts are still courts of limited jurisdiction. While CAFA admittedly broadens federal removal jurisdiction, it does not unanchor the federal courts from the basic principle of federalism that requires the construction of removal statutes against a removing defendant.

*Moniz* presented to the district court in Massachusetts a question of the CAFA removability of a case involving the question of the possible "relation back" of an amendment that made a substantive change in a theory, or that added new claims for relief after the enactment of

---

4. Moreover, under 28 U.S.C. § 1447(c), "[i]f at any time before final judgment it appears that the district court lacks subject-matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal". Adopting defendants' position would lead to the further anomalous result that a non-removing defendant in a mass action—who nevertheless has its claims removed by another defendant under CAFA— might be required to pay attorneys fees and costs associated with an improper removal even though that defendant did not submit to or join the notice of removal.

CAFA. First, *Moniz* was a "class action" and not a "mass action". No new defendant was added as in the instant case. The idea of "relation back" in a case in which a new defendant is added was not addressed in *Moniz* except as *dicta*, and is clearly not presented in the instant case. The claims against these original defendants were the same on June 20, 2006, when Alabama Power and Filler Products were added, as they were on January 24, 2003, when the complaint was first filed.

### B. Do Alabama Power and Filler Products Meet the CAFA Removal Requirements?

■ The court having concluded that the CAFA removal provisions apply only to Alabama Power and Filler Products, and that the action against the original defendants cannot tag along, the court next examines whether the removal by the two post-CAFA parties was effective. The court knows of no reason why Filler Products is excused from compliance with 28 U.S.C. § 1446(b) and (d) which required it to remove, as Alabama Power did, within thirty days after it first received a paper alerting it to the fact of removability. However, this failure by Filler Products becomes academic in light of the conclusion this court reaches that the substantive removal requisites for post-CAFA removal were not met either by Alabama Power or by Filler Products.

To repeat for the third time, in CAFA "jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a)." 28 U.S.C. § 1332(d)(11)(B)(i). As in diversity removals generally, the amount in controversy must "exceed the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). The original nine plaintiffs specified in their original complaint that each demanded $1,250,000 plus costs. However, nowhere in any subsequent amendment does any plaintiff claim or otherwise designate a specific amount of damages, and Alabama Power was not added as a defendant until the third amended and recast complaint was filed. Alabama Power apparently argues that, because CAFA became effective before plaintiffs filed their first amended and recast complaint— *i.e.*, when the complaint contained an express demand of more than $75,000 in damages for each plaintiff—the jurisdictional amount requirement of 28 U.S.C. § 1332(d)(11)(B)(i) has been met. Alabama Power's argument is unconvincing because the action had not "commenced" as to it when the original complaint was still in effect. The action did not so "commence" as to Alabama Power until the third amended and recast complaint was filed, and by that time plaintiffs had eliminated any specification of damages being sought. It is of no consequence that CAFA became effective when the astronomical amount in controversy was still specified in the complaint, because such amount was **not** specified when the action became even arguably removable under CAFA. During the time the original complaint was still operative, not only had the action not yet "commenced" as to Alabama Power, but neither had the 28 U.S.C. § 1332(d)(11)(B)(i) requirement that a "mass action" must involve the monetary relief claims of at least 100 persons been met.

■ By the time this action could possibly have become a "mass action" removable under CAFA, the complaint in effect was silent as to the amount in controversy. And when a state court complaint is uncertain or silent on the amount being sought, the removing defendant under 28 U.S.C. § 1332 has the burden of proving the jurisdictional amount by a preponderance of the evidence. *Leonard v. Enterprise Rent A Car*, 279 F.3d 967, 972 (11th Cir.2002).

Nothing in CAFA changes this rule. A conclusory allegation in the notice of removal cannot supply the proof necessary to meet this burden. In spite of the rather unrealistically ambitious amount-in-controversy figure specified in the original complaint, the values of the claims contained in the third amended and recast complaint are highly speculative. This court, based on its experience and on the voluminous state court file, frankly doubts, despite plaintiffs' counsel's bravado on behalf of some of his unnamed clients, that any plaintiff's claim exceeds $75,000 in value, much less that all claims aggregate in excess of $5,000,000 in value, as required for a CAFA removal. It is easy to hope that 419 combined claims have an aggregate value over $5,000,000. It is something else for a removing defendant to prove it.

## 1. Under CAFA, Do the Plaintiffs Bear the Burden of Establishing the Nonexistence of the Amount in Controversy?

█ Does the fact that none of these named 419 plaintiffs disclaim and disavow all intention or hope of recovering more than $75,000, and that they are willing to engage in wishful thinking that their total claims are worth $5,000,000, constitute proof of the existence of the CAFA jurisdictional amount? Defendants say that it does. Plaintiffs say that it does not. It comes down to which side has the burden of proof on this subject, and how, and if, that burden can be met in a "mass action" case. The Eleventh Circuit has recently gotten ahead of the district court who wrote *Moniz* by holding that **"CAFA does not change the traditional rule that the party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction"**. *Evans v. Walter Indus.*, 449 F.3d 1159, 1164 (11th Cir. 2006). (emphasis added). In *Evans*, the Eleventh Circuit recognized an exception only when there is an **express** exception,

holding that "when a party seeks to avail itself of an express statutory **exception** to federal jurisdiction granted under CAFA … the party seeking remand bears the burden of proof with regard to that **exception**". *Id.* (emphasis added). The instant case presents a question of first impression, namely, whether the § 1332(d)(11)(B)(i) *proviso* that "except that federal jurisdiction shall exist only over [the plaintiffs with $75,000 claims]" constitutes an "**exception** to federal jurisdiction granted under CAFA" as in *Evans* and thus for the first time places the burden of proving the **absence** of jurisdiction on plaintiffs. (emphasis added). Alabama Power contends that the burden of proof for establishing the absence of $75,000 in controversy, and thus obtaining a severance and remand, rests upon each plaintiff separately. This argument is based on Alabama Power's reading of the *proviso* as an **exception** to federal jurisdiction and would take *Evans* into new and uncharted territory. Alabama Power misconstrues the meaning of the phrase "exception to federal jurisdiction". As will be demonstrated, the *proviso* is not an "exception".

In *Evans*, the Eleventh Circuit was considering whether the defendant or the plaintiff bears the burden of proving CAFA's "local controversy exception" to jurisdiction after the base requisites of removal jurisdiction had already been met. 449 F.3d at 1161. CAFA's local controversy **exception** provides:

A district court **shall decline to exercise jurisdiction** under paragraph (2)—

(A) (I) over a class action in which—

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

(II) at least 1 defendant—

(aa) from whom significant relief is sought by members of the plaintiff class;

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed; and

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3–year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons;

28 U.S.C. § 1332(d). (emphasis added).

The Eleventh Circuit concluded that because this is a 20 provision that requires the court to decline an exercise of jurisdiction, even though jurisdiction otherwise exists under CAFA, plaintiffs there had the burden of establishing the requisites for the exception. 449 F.3d at 1164.

The $75,000 limitation in 28 U.S.C. § 1332(d)(11)(B)(i) is quite unlike the local controversy exception of 28 U.S.C. § 1332(d)(4). If there is an absence of $75,000 in controversy, there is no jurisdiction *ab initio* and thus nothing to decline. Federal jurisdiction simply does not exist over claims of less than $75,000. The "local controversy" exception describes a situation in which jurisdiction exists but in which the court must decline to exercise it. Alabama Power's myopic focus on the word "except" does not change this distinction. The $75,000 *proviso* is not an "exception" to federal jurisdiction, but a criterion for determining whether federal jurisdiction exists in the first place. In *Evans*, the Eleventh Circuit squarely rec-

ognized that the burden of establishing jurisdiction in a CAFA case is on the party seeking removal, and the $75,000 amount in controversy is a necessary element of federal jurisdiction, upon which the removing defendant has always had and still has the burden of proof. 449 F.3d at 1164.

The same analysis appertains as to the $5,000,000 required for CAFA jurisdiction, although this aggregation concept is contained in a subsection of CAFA separate from the individual $75,000 limitation in "mass action" cases.

**2. Has Alabama Power Met Its Burden of Establishing $75,000 in Controversy for Individual Plaintiffs and/or $5,000,000 in Controversy in Total?**

While insisting that each plaintiff has the burden of proving the absence of $75,000 in controversy in order to obtain a remand of his claim, Alabama Power takes the fallback position that if it bears the burden of establishing $75,000 in controversy, that burden only applies as to one plaintiff, and that it has met that burden by virtue of counsel's in-court admission, a concession that, according to Alabama Power, reimposes upon plaintiffs the burden of establishing which of them expect to recover less than $75,000 and thus be entitled to a severance and remand.

Alabama Power relies upon the following colloquy that occurred in open court:

THE COURT: Lloyd [Lloyd Gathings, plaintiffs' counsel], you and Bill [Bill Thomason, plaintiffs' other counsel] seriously think that one or more of your 400 plaintiffs is going to have a shot at more than $75,000?

MR. GATHINGS: One or more, Judge. All of them don't.

■ Alabama Power's argument loses steam quickly because, even if Mr. Gathings' conclusory statement suggests that

under such circumstances the amount-in-controversy requirement is met as to at least one plaintiff, there is no authority for the proposition that the burden thereupon shifts to plaintiffs to establish that the requirement is **not** met as to all other plaintiffs.[5] Mr. Gathings never mentioned the name of a single plaintiff, much less linked any plaintiff with a particular *ad damnum*. The damages situation remains fluid and amorphous.

Mr. Gathings' in-court statement cannot satisfy Alabama Power's burden of establishing the jurisdictional amount as to some plaintiff or plaintiffs. The statement only reflects Mr. Gathings' belief that at least one of his clients has a claim exceeding $75,000 in value, but the voicing of his opinion cannot establish for which plaintiff or plaintiffs Mr. Gathings holds this belief, or on what his belief is based. Moreover, in response to the court's order requiring plaintiffs to provide information concerning the values of their individual claims, plaintiffs forthrightly explained that they do not know which, if any, have claims that may reasonably be expected to exceed $75,000 in value. Mr. Gathings did not specify, because he could not, which plaintiffs have claims whose values exceed $75,000. This is not his fault. The court can well understand his reluctance to place a cap on individual claims when there remains a lot of discovery to be done on the subject of the damages of various and sundry types possibly suffered by widely divergent plaintiffs.

■ Defendants' hopeful conjecture based on Alabama jury verdicts in cases that may have some similarity to this case, but are not closely similar, do not suffice to remove the obligation of the removing defendants to prove that the jurisdictional amount exists in a case in which no plaintiff has formally claimed a particular sum, much less a sum more than $75,000. For the fourth and final time, 28 U.S.C. § 1332(d)(11)(B)(i) provides that "jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a)." The statute does **not** say that "jurisdiction shall exist over all plaintiffs in a mass action if at least one of them satisfies the jurisdictional amount requirement." Even if Mr. Gathings' statement purported to concede jurisdiction under the foregoing hypothetical version of the statute, it does not do so under the statute as actually written. As already overemphasized, it is Alabama Power's burden to establish the jurisdiction of this court over **all** claims, and Mr. Gathings' in-court statement did not relieve Alabama Power of its burden.

In the two cases proffered by Alabama Power, plaintiffs sued over alleged pollution and recovered more than $75,000 in an Alabama court. Such anecdotal evidence, although it is quite often cited in notices of removal in diversity cases as proof of the value of a removed claim, is not enough to establish jurisdiction in a "mass action"

---

5. Moreover, the severance and remand that will ultimately occur if the current removal is allowed when it becomes apparent that some of the 419 plaintiffs have claims of less than $75,000 is something to contemplate fearfully. There is no question about the lack of jurisdiction over "mass action" plaintiffs who only seek less than $75,000. On Alabama Power's theory, the court can envision keeping the case of one of 419 plaintiffs, and remanding 418, after two years of discovery. Judicial economy was not totally ignored in CAFA. If the court could, at this juncture, determine which plaintiffs have claims less than $75,000 in value as against Alabama Power, and remand only them, doing so would create a bifurcation that would be productive only of duplicate effort and unknown problems, compounded by the certain fact that either the state court proceeding or the proceeding in this court would end first and impact the other.

removal. First, the cited cases are not sufficiently similar to this case to prove by a preponderance of the evidence that any particular one of these 419 plaintiffs has a legitimate expectation of recovering in excess of $75,000. Second, the cited cases do not tend to prove **which,** if any, of plaintiffs' claims exceeds $75,000 in value. Third, the cited cases cannot logically be thought to establish by a preponderance of the evidence that **all** of plaintiffs' claims meet the amount-in-controversy requirement. Mr. Gathings' statement indicates no more than his fond hope that some of his clients will recover more than $75,000. Conspicuously, Alabama Power offers no citation to a case filed by 100 or more individual plaintiffs whose combined claims are held together only because of alleged common questions of law and fact, and in which an Alabama court allowed a total recovery in excess of $5,000,000.

Because Alabama Power has not met its burden of establishing jurisdiction over a single named plaintiff, much less over all plaintiffs, this court cannot keep any part of this case. It cannot logically remand only the claims of those plaintiffs whose cases are worth less than $75,000 when there is no basis for distinguishing one plaintiff from another. The court cannot merely guess, and cannot retain jurisdiction over the whole case against Alabama Power or any other defendant during the period in which the parties try to ascertain which, if any, of the 419 claims is worth more than $75,000. If the court kept the case temporarily, it would eventually be forced by 28 U.S.C. § 1447(c) to remand most of the claims because it will surely appear after further discovery that they are worth less than $75,000.

## III. Alternative Serious Jurisdictional Deficiencies

There are alternative reasons why this case must be, or should, in the interest of justice, be remanded.

First, "the term 'mass action' shall not include any civil action in which ... all of the claims in the action arise from an event or occurrence in the State in which the action was filed, and that allegedly resulted in injuries in that State...." 28 U.S.C. § 1332(d)(11)(B)(ii)(I). Although in the case before the court the facts pertinent to an application of this statutory provision have not been fully developed, it facially appears that the language, if and when applied, will prevent the action from constituting a "mass action", and will destroy CAFA removability.

Second, according to 28 U.S.C. § 1332(d)(11)(A), in order for a "mass action" to be removable, it must meet the general requirements of a "class action" as defined in 28 U.S.C. § 1332(d)(2) through (10). The instant action falls short of these requirements. The court need not tick off the various failures to meet the "class action" definition. They require evaluation only if the court is incorrect as to other fatal jurisdictional defects already dismissed.

Third, if this action qualifies as a "mass action," the court is required to decline jurisdiction **if** greater than two-thirds of the plaintiffs are citizens of Alabama, **if** at least one defendant from whom significant relief is sought is a citizen of Alabama, and **if** the principal injuries relate to conduct that occurred in the state in Alabama. 28 U.S.C. § 1332(d)(4)(A)(i) (I, II, III). If these statutory provisions are met, a remand becomes mandatory. The fact that under *Evans* the burden of proof on these issues is on plaintiffs, and that in this case plaintiffs have not attempted to affirmatively meet their burden, does not mean that these local controversy facts do not facially appear, or that plaintiffs cannot satisfy their burden after filing a renewed motion to remand. The court cannot find a limitation in CAFA or in *Evans* on the

time within which a plaintiff can raise a subject-matter jurisdictional issue such as this one.

## IV. Plaintiffs' Motion for Reconsideration of the Court's Order of August 16, 2006

Plaintiffs have requested reconsideration of the August 16, 2006 order requiring them to provide the names and addresses of all plaintiffs whose claims can reasonably be expected to exceed $75,000 in value, together with a one-paragraph explanation as to why particular claims are worth more than $75,000. As previously discussed in another context, plaintiffs explain that they do not have this information, and ask the court either to set aside the order or to accept their enigmatic answer as a sufficient explanation for their failure to provide the requested information. Believing that plaintiffs cannot be expected to know the values of their claims at this juncture, the court will grant their motion.

## V. Conclusion

Because this purported "mass action" was commenced against the original defendants before the enactment of CAFA, those defendants cannot avail themselves of CAFA, and the court accordingly must remand this action as to them. Because the two defendants who were added after CAFA's enactment have failed to establish that this court has subject-matter jurisdiction over the claims of any particular plaintiff, much less over all plaintiffs, the court will also remand the action as to the two defendants added after the enactment of CAFA.

A separate order of remand will be entered.